HILLSDALE COLLEGE v. ALEXANDER C. RIDEOUT ET AL.

*Construction of contract—Hillsdale College—Deed—Estoppel.*

1. It was clearly contemplated by the founders of Hillsdale College, by its articles of association, and by the terms of the deed to it of the land occupied by the college, that it should be carried on as a unit; and no power is conferred upon the board of trustees to create separate schools or colleges. Separate departments may be organized, but they must all belong to and be a part of the college, and the trustees have no power to convey the title to any part of said land to any person or institution for the purpose of carrying on a separate school.

2. It is the exclusive function of the board of trustees of Hillsdale College to determine whether or not they will maintain a boarding-hall in connection with the college, and, if they determine to do so, where it shall be maintained.

3. The doctrine of estoppel cannot apply where there was no power conferred upon the corporation to convey the title and interest claimed.

4. In this case the decree below . is affirmed, which gives defendant Rideout the right to the possession and use of "Griffin Hall," so called, for the sole purposes of carrying on and conducting a commercial and telegraphic school as a department of Hillsdale College, and for maintaining and furnishing dormitories for the use of male students, and teachers connected with the college in any of its departments, which right is one

*personal* to himself, and not transferable; and he has the right to make such repairs, changes, and alterations as may be necessarily incident to the full enjoyment of the building for the purposes named; but he cannot rent or use any portion of the building for general family or residence purposes, nor can he carry on a boarding or dining hall in the building.

Appeal from Hillsdale. (Lane, J.) Argued April 9, 1890. Decided August 1, 1890.

Bill to restrain defendants from using a portion of Hillsdale College for the purpose of keeping a dwelling and school boarding-house, etc. Defendants appeal. Affirmed. The facts are stated in the opinion.

*A. St. John, O. A. Janes,* and *E. L. Koon (T. A. Wilson,* of counsel), for complainant, contended for the doctrine stated in the opinion.

*Daniel L. Pratt (Dallas Boudeman,* of counsel), for defendants, contended:

1. Defendant Rideout has at least a continuing right or easement in the land upon which he has erected Griffin Hall, an interest greater than a mere license, and complainant is bound by an equitable estoppel from dispossessing him, his heirs or assigns, from the lands, so long as the building remains; citing *Morrill v. Mackman,* 24 Mich. 281; *Maxwell v. Bridge Co.,* 41 Id. 453.

2. If defendant's rights were simply those of a licensee, he would be thoroughly protected. He would have a license coupled with an interest, because of his expenditure of $17,000 in the way of improvements upon the property, which license becomes irrevocable, and he thereby acquires an easement in the lands, which will pass by assignment or will; citing *Wood v. Leadbitter,* 13 Mees. & W. 845; *Sterling v. Warden,* 51 N. H. 228; 7 Wait, Act. & Def. 198; *Goff v. Oberteuffer,* 3 Phila. 71; 2 Bouv. Inst. 570; *Russell v. Hubbard,* 59 Ill. 335; *U. S. v. Railroad Co.,* 1 Hughes, U. S. 138.

3. Expenditures made by a licensee upon the faith of a parol license may operate as an estoppel which will prevent the licensor from revoking the license; citing *Lane v. Miller,* 27 Ind. 534; *Wilson v. Chalfant,* 15 Ohio, 248; *Swartz v. Swartz,* 4 Penn. St. 353; *Lacy v. Arnett,* 33 Id. 169; and this Court has

strongly intimated that these cases are good law; citing *Maxwell v. Bridge Co.*, 41 Mich. 467; *Day v. Walden*, 46 Id. 584.

4. If defendant had a mere license to erect the building on complainant's land, it could not be revoked until he was paid the amount of his expenditures; citing *Railroad Co. v. McLanahan*, 59 Penn. St. 23; *Miller v. Tobie*, 41 N. H. 86.

5. The act of complainant was within its corporate powers, and the doctrine of *ultra vires* has no application to this case; citing *Bradley v. Ballard*, 55 Ill. 413; *Building Society v. Crowell*, 65 Id. 453; *West v. Board*, 82 Id. 205; *Darst v. Gale*, 83 Id. 141; *Ward v. Johnson*, 95 Id. 215; *Vandall v. Dock Co.*, 40 Cal. 83; *Argenti v. San Francisco*, 16 Id. 255; *McCluer v. Railroad Co.*, 13 Gray, 124; *Hale v. Ins. Co.*, 32 N. H. 297; *Goodwin v. Union Screw Co.*, 34 Id. 378; *Railroad Co. v. Howard,* 7 Wall. 413; *Parish v. Wheeler*, 22 N. Y. 494; *Bissell v. Railroad Co.*, 32 Id. 258; *Perkins v. Railroad Co.*, 47 Me. 590; *Watts' Appeal*, 78 Penn. St. 370; *Brown v. Winnisimmet Co.*, 11 Allen, 326; *Railway Co. v. McCarthy*, 96 U. S. 267; *Dana v. Bank*, 4 Minn. 385; *Dupee v. Water Power Co.*, 114 Mass. 37.

6. Rideout was an innocent party, and dealt with the complainant in the best of faith, and complainant is estopped from denying its power to contract with him; citing *Bank v. Bank*, 10 Wall. 604, 644; *Gano v. Railway Co.*, 60 Wis. 12; *Castle v. Lewis*, 78 N. Y. 131.

7. The rule is well settled that the principle of *ultra vires* will not prevail for or against a corporation when it is· opposed to justice and would cause a wrong; citing *Arms Co. v. Barlow*, 63 N. Y. 62; *Hough v. Land Co.*, 73 Ill. 23; *Darst v. Gale*, 83 Id. 140.

8. In any event, complainant must pay Rideout the value of anything and everything of his 'which has been applied to its use or for its benefit. The plainest rules of equity and justice require it; citing *Railroad Co. v. Simpson*, 23 Fed. Rep. 214; Brice, *Ultra Vires* (2d Eng. ed.), 769; *Humphrey v. Association*, 50 Iowa, 609; *Vanatta v. Bank*, 9 Ohio St. 27; *White v. Bank*, 22 Pick. 181; *Brooks v. Marlin*, 2 Wall. 70; *Bank v. Bank*, 16 Id. 483.

GRANT, J. Hillsdale College was organized in 1855, under an act of the Legislature providing for the organization of corporations for the purpose of founding and establishing a college, seminary, academy, or other institution of learning. How. Stat. § 4373. Twenty-five

acres of land were donated and conveyed to it for college and academic purposes, and for no other purposes whatever. It has been in continuous operation, fulfilling the purposes for which it was organized.

Defendant Rideout, for some time prior to 1870, carried on a commercial and business institute in the city of Hillsdale. On June 6, 1870, he made a proposition to the complainant as follows:

"1. To remove the Commercial College to Hillsdale College, annex and conduct it nominally as a department.

"2. That said commercial department occupy such part of the college edifice as may be agreed upon with the building committee, the undersigned paying rent therefor at such rate as may be agreed upon.

"3. That the said commercial department be provided by the undersigned with at least $2,000 worth of furniture and fixtures of quality fully equal to appurtenances usually found in connection with commercial colleges, and that it shall be open to receive students at the beginning of the fall term of the next college year.

"4. That said commercial department shall be conducted by the undersigned without expense or liability to said college.

"5. That students of said department pay to said college matriculation fees, and be subject to discipline, the same as students of the college proper.

"6. That the undersigned have a voice and vote in the faculty of said college upon all matters related to discipline in said commercial department.

"A. C. RIDEOUT."

The board of trustees held several meetings, and on June 28, 1870, made an agreement in writing with Rideout by which the college leased to him a certain portion of the college building to be occupied by the commercial department of Hillsdale College, and for no other purpose whatever, the department to be called and known as the "Commercial and Telegraphic Department of Hillsdale College." The students of that department were to

82 MICH.—7.

be subject to all the rules and regulations, the same as
students of other departments. The lease was for five
years, with an annual rental of $300. Rideout had the
privilege of making certain alterations, and agreed to
keep the premises in repair. Complainant reserved the
right to terminate the lease at the end of the first or
second year.

This arrangement continued until March, 1874, when
the building was destroyed by fire. June 17, 1874, the
board of trustees passed a resolution for the erection of
a building suitable in size and architectural style, upon
the college ground, for the use of a commercial depart-
ment, provided such conditions and relations to the
college could be mutually agreed upon as should be satis-
factory, the said commercial department to furnish the
means for constructing said building. June 30, a com-
mittee was appointed to confer with Rideout to arrange
and recommend details, and report at a future meeting.
July 23, this committee reported, and the following
resolution was adopted:

" *Resolved*, That A. C. Rideout be authorized to raise
funds for the erection of the building in the group of
college buildings to the west, and in a line with the
center building, with the understanding that such part
of said building as may be necessary shall be set apart
for the use of the commercial department of Hillsdale
College, and that the remainder shall be appropriated to
gentlemen's dormitories, with the further understanding
also that those having charge of the commercial depart-
ment shall enjoy all the rents arising from the commer-
cial building, upon condition that they be at the expense
of keeping it in necessary repair; and, in case A. C.
Rideout raises the funds adequate to the erection of the
commercial building, the commercial department shall
sustain the relations to the college herein set forth:

"1. The college shall not be liable for maintaining the
commercial department, but said department shall be self-
sustaining.

"2. Commercial students shall, as others, pay to the college the usual matriculation fee.

"3. Commercial students shall be under the same general regulations as others in the college.

"4. The commercial department shall be represented in the faculty of college, the numbers from the commercial department and kind of representation being determined from time to time by the board of trustees. At present Prof. A. C. Rideout and W. A. Drake shall enjoy such representation, being entitled to a voice in all matters pertaining to the government of the college."

This was accepted by Rideout, and the necessary funds were raised, and the building known as "Griffin Hall" was erected. It was a substantial structure, built with walls of brick and stone, permanently imbedded in, and attached to, the soil. Scholarships for that department were sold, and the funds were largely realized in that manner. These scholarships were dated April 13, 1875, and were payable in monthly installments at 10 per cent. at the Second National Bank of Hillsdale, to be held in trust until such time, not exceeding 10 months from date, as it should be announced by authority of the trustees that a sufficient amount had been secured to insure the erection of the building. If a sufficient amount was not secured within the time, then the sums paid were to be returned to the subscribers.

December 16, 1875, Rideout notified the prudential committee of the board that he had nearly sufficient funds subscribed, desired to make contracts for material, and asked for suggestions as to general exterior appearance. The committee met December 17, and appointed a subcommittee to decide who should be authorized to make contracts, etc., and report at a future meeting. December 21, the following resolution was adopted by the prudential committee:

"WHEREAS, it appears that a subscription has been secured nearly sufficient to make sure the erection of the

building to be occupied by the commercial and telegraphic department of Hillsdale College, with a prospect of the remainder being secured before January 1, 1876; therefore,—

"*Resolved*, that A. C. Rideout be authorized to notify the subscribers, according to the considerations of the subscription, when, in his judgment, the additional amount necessary to make sure the erection of said building shall have been duly pledged, and that he be further authorized to collect the subscriptions, and expend the same for material and labor to be used in the erection of said building; it being understood that said building is to be erected in accordance with the general plan of the group of college buildings, and of a style to correspond, and that the plans of said building shall first be submitted to this committee, and be approved by it; and it being further understood that no liability attach, in any way, to Hillsdale College in connection with said building."

Upon the completion of the building it was occupied for the purposes indicated, and a commercial and telegraphic department was carried on under the direction of Rideout. Many of the students occupied dormitories, and some of them boarded in the general boarding-hall of the college, located in another building.

July 12, 1884, Rideout made a contract with his co-defendants, by which he agreed to let and hire to them several rooms in Griffin Hall, for the purpose of keeping a dwelling and school boarding-house, the lease being for five years. This required certain alterations to be made in the building. Notice was served upon the defendants forbidding the changes and the use of the building for the purposes mentioned. Defendants refused, and complainant filed a bill in equity to restrain the proposed action of the defendants, and for a determination of the rights of defendant Rideout in Griffin Hall. Defendant Rideout answered, denying the right of the complainant to relief, and claiming the right to use the building for the purposes mentioned in the lease, and also asking the benefit of a cross-bill to determine his rights in the building.

The cause was heard upon pleadings and proofs, and decree rendered in the court below for complainant, decreeing that the defendant Rideout had the right to the possession and use of Griffin Hall, together with the right of ingress and egress therefrom, for the purposes only of carrying on and conducting a commercial and telegraphic school as a department of Hillsdale College, and for maintaining and furnishing dormitories for the use of male students, officers, and teachers connected with the college in any of its departments; that the right of Rideout to possess and use this hall was a right personal to himself, and not subject to be assigned, sold, or in any manner transferred by him; that he had every right necessary and usual for the proper and orderly carrying on and enjoyment of the building for these purposes, but not the right to change the general plan or structure of the building, but that he had the right to make such repairs, changes, and alterations as may be necessarily incident to the proper and full enjoyment of the said uses; that he had not the right to rent or use any portion of the building for general family or general residence purposes, nor the right to carry on a boarding or dining hall in the building.  Defendants appeal.

Defendant Rideout claims the absolute right to control this department; that it is not an organic part of the college; that he has a right to supply boarding facilities in the building, to make any changes he desires; and that he is the owner of the building; and that the equitable estate in that part of the land upon which the hall stands, together with the building, appurtenances, and hereditaments thereunto belonging, were granted, and vested in him.  The claim of the defendant Rideout is stated by his learned counsel as follows:

" That the resolution of July 23 is a conveyance; that the building is his property, without any qualification or

limit, so long as used by him, his heirs, successors,' or assigns, for the purposes of his school; or if not a conveyance, then a grant in the form of an irrevocable license, coupled with an interest; and that the estate thus created in said Rideout is one of perpetuity and inheritance."

The board of trustees consisted of 35 members, and this prudential committee appointed by the board was intrusted with the general charge of the interest of the college, and special care of the buildings and real estate of the college, during the intervals between the meetings of the board, and all their transactions were made subject to the articles of association, the by-laws, and general action of the board.

1. It was clearly contemplated by the founders of Hillsdale College, by its articles of association, and by the terms of the deed of the lands to it, that it should be carried on as a unit. No power is conferred upon the board of trustees to create separate schools or colleges. Separate departments may be organized, but they must all belong to and be a part of the college. If, therefore, the construction contended for by the defendant's counsel could be placed upon the resolution of July 23, which forms the contract between the complainant and the defendant Rideout, it would, in our judgment, be clearly *ultra vires*, and void. Under the deed the college had no power to convey the title to any part of the real estate so conveyed to it to any person or institution for the purpose of carrying on a separate school.

2. No inference can be drawn from this resolution that it was the intention to convey to defendant Rideout any title to or permanent interest in the building or land which should be descendable to his heirs, and which he could sell and assign. The very terms of the resolution are repugnant to any such claim. It provides that he shall enjoy all the rents, and that he shall at his own

expense keep the building in repair. These terms would be idle if it was understood that he owned the building. It is of no consequence whether he erected the building with his own funds or not. It was not contemplated at the time by the terms of the resolution that he was to erect the building with his own funds; but it was clearly understood that he should raise the funds for the erection of the building not for his own benefit alone, but for the benefit of the college, and that the building, if erected, should become a part of the college property. If instead of raising the funds from others, as contemplated, he contributed his own money for the erection of the build- ing, that forms a matter for equitable adjustment only between him and the college. It gives him no legal rights. The professors of that department were expressly made a part of the college faculty, and two of its members were then appointed to enjoy such representation, and were entitled to a voice in all matters pertaining to the government of the college. It is unnecessary to determine whether the defendant Rideout erected the building with his own funds or not. If he did, it was clearly a voluntary contribution, the same as that of any other subscriber, and with no intention to give him any title to or interest in any of the college property. He is entitled to the use and benefit of the building, and to receive the rents and profits thereof, so long as he retains his connection with and management of that department. His rights and interests will cease upon his death, or whenever he shall cease his connection with it.

3. There is no room for an application of the doctrine of estoppel. Both parties to the contract are presumed to have contracted with full knowledge of the law and the powers inherent in the college corporation. No charge of fraud or misrepresentation is or can be claimed. The doctrine of estoppel cannot apply where there was

no power conferred upon the corporation to convey the title and interest claimed.

4. It is contended that defendant Rideout has the right to maintain a general dining-hall in the building in which to board the students. A large amount of testimony was taken upon both sides bearing upon the necessity for another dining-hall in the college. That is a matter which belongs to the board of trustees to decide, and with which the courts have nothing whatever to do. Defendant's claim in this respect is based largely upon the idea that the word "dormitory" includes a place for meals, or, in this instance, a boarding-hall. "Dormitory" is defined by the lexicographers as "a room, suite of rooms, or building used to sleep in; a bedroom; sleeping quarters or sleeping-house; a lodging-house." The testimony in the case that in some schools and colleges which supply dormitories for their students boarding-halls are provided has no bearing upon the question here involved. It does not tend to establish defendant's claim, that the students in his department have been permitted to board themselves in their rooms, nor that he has been permitted to occupy rooms in the building for his own family purposes. This is very different from maintaining a general dining-hall. We must interpret the word in its usual significance. The complainant college has always had one dining-hall situated in another building. No general dining-hall was or is necessary for the commercial department, or has ever been maintained there. It was certainly not contemplated by the contract between the parties, nor has it been so interpreted by their actions. The building for the commercial department was not erected with accommodations for a general dining-hall. Changes must be made in order to adapt it to that purpose. As soon as defendant Rideout attempted this the complainant took prompt steps to prevent it.

This resolution is plain and unambiguous, and cannot now be interpreted in the light of facts which have recently arisen. It is the exclusive function of the board of trustees of the college to determine whether or not they will maintain a boarding-hall in connection with the college, and, if they determine to do so, where it shall be maintained.

Decree affirmed, with costs of both courts.

The other Justices concurred.